699 S.E.2d 146

SOUTH CAROLINA AMBULATORY SURGERY CENTER AS-
SOCIATION; Ambulatory Surgery Center of Spartanburg,
LLC; Blue Ridge Surgery Center; Low Country Orthopedics &
Sports Medicine, LLC; Lowcountry Surgery Center, LLC; Mid-
land Orthopaedics Surgery Center, LLC; Moore Orthopaedic
Clinic Outpatient Surgery Center, LLC; Surgery Center at
Pelham, LLC; Ocean Ambulatory Surgery Center; Upstate
Surgery Center, L.L.C., Respondents/Appellants,

v.

The SOUTH CAROLINA WORKERS' COMPENSATION
COMMISSION, Appellant/Respondent.

No. 26875.

Supreme Court of South Carolina.

Heard Feb. 16, 2010.
Decided Sept. 7, 2010.
Rehearing Denied Oct. 6, 2010.

William H. Davidson, II and Kenneth P. Woodington, Davidson & Lindemann, of Columbia, for Appellant–Respondent.

Steven W. Hamm and C. Jo Anne Wessinger Hill, of Richardson, Plowden & Robinson, of Columbia, for Respondents–Appellants.

Justice BEATTY.

In this cross-appeal, we consider the central question of whether the South Carolina Workers' Compensation Commission ("the Commission") was required to promulgate a new regulation in order to change the fee payment schedule for ambulatory care centers. Because we find the Commission's actions were specifically authorized by an extant regulation and did not implicate the requisite private right to warrant due process protections, we reverse the portion of the circuit court's order finding that a new regulation was necessary to effectuate the Commission's change to the fee payment schedule. Accordingly, we affirm in part and reverse in part.

## I. FACTUAL/PROCEDURAL BACKGROUND

In this action, several ambulatory surgery centers and their trade association (collectively "Surgery Centers") challenged

the revised schedule for maximum allowable payments to outpatient medical providers approved by the Commission.

Under the South Carolina Workers' Compensation Act, the medical fees charged claimants by physicians and hospitals are subject to the submission and approval by the Commission. S.C.Code Ann. § 42–15–90 (1985).[1] The purpose of fee payment schedules is for medical cost containment[2] as most employers are required to carry workers' compensation insurance. *Id.* Medical care providers voluntarily treat workers' compensation patients, but are not required to do so. Although the Commission is authorized by statute to conduct a hearing to review each bill that is submitted, it has instead published schedules listing the maximum allowable payment. If the amount to be paid is under the cap, the Commission does not conduct a review. *Id.*

The Commission currently publishes three schedules of maximum allowable payments: (1) Payments for Physicians' Services, known as the Medical Services Provider Manual, first published in 1953; (2) Payments for Inpatient Hospital Services, first published in 1984; and (3) Payments for Outpatient Services, including those services provided by Surgery Centers, first published in 1997.

---

1. Section 42–15–90 provides in relevant part:

 Fees for attorneys and physicians and charges of hospitals for services under this title shall be subject to the approval of the Commission; but no physician or hospital shall be entitled to collect fees from an employer or insurance carrier until he has made the reports required by the Commission in connection with the case.

 S.C.Code Ann. § 42–15–90 (1985). The approval process is outlined in 25A S.C.Code Ann. Regs. 67–1305 (Supp.2009), which provides that a fee dispute between a medical provider and an employer or insurance carrier is referred to the Commission's medical division for final resolution. Any policies or procedures implementing the provisions of section 42–15–90 are governed by the South Carolina Administrative Procedures Act. S.C.Code Ann. § 42–3–185 (1985).

2. In terms of medical cost containment, the General Assembly has provided that medical costs should be limited to reasonable costs. *See* S.C.Code Ann. § 42–15–70 (1985) ("The pecuniary liability of the employer for medical, surgical and hospital service or other treatment required, when ordered by the Commission, shall be limited to such charges as prevail in the community for similar treatment of injured persons of a like standard of living when such treatment is paid for by the injured person. . . .").

In 1997, the Commission also revised its regulations to reflect certain changes to the way the maximum allowable payment schedules would operate. Regulation 67–1304, the regulation for hospital outpatient services and ambulatory surgical centers, states:

A. The Commission shall develop a prospective payment system for outpatient hospital services and services rendered by ambulatory surgical centers.

B. *Until such time* as the prospective payment system is operational the payments for hospital outpatient services and ambulatory surgical centers shall be set by the Commission based on a discount to the provider's usual and customary charge.

25A S.C.Code Ann. Regs. 67–1304 (Supp.2009) (emphasis added).

The Commission set the interim discount amount at 12.1 percent during a Commission business meeting in 1997, rather than by regulation. As a result, all outpatient bills would be discounted 12.1 percent and payment would be made at an amount no higher than 87.9 percent of the charged amount.

In November 2004, the Commission convened its Hospital Advisory Committee (Advisory Committee) to discuss, among other things, the establishment of a new schedule of maximum allowable payments for hospital outpatient services and ambulatory surgical centers pursuant to Regulation 67–1304(A), to replace the interim discount amount adopted in 1997. The Advisory Committee met six times over an eighteen-month period. An additional subcommittee was formed and met twice more to fully collect and analyze data related to the schedule.[3]

On June 19, 2006, the Advisory Committee issued its report, recommending revisions to the existing schedules for payments. The Advisory Committee recommended the maximum allowable payments be no more than 140 percent of the

---

**3.** To a limited extent, articles about the issues and the process were published in the following periodicals: (1) the Winter 2004 and 2005 editions of *Workers' Comp Notes,* a publication of the South Carolina Workers' Compensation Educational Association; (2) the April 2005 Commission Update; and (3) the *State Register* that was published in April 2006.

applicable Medicare payment, *i.e.*, the cap would be equal to what Medicare would pay out, plus 40 percent. Subsequently, in the course of a Full Commission business meeting, the Commission adopted the Advisory Committee's recommended schedules with an effective start date of October 1, 2006.

On September 29, 2006, Surgery Centers filed this action challenging the Commission's revised schedule for maximum allowable medical payments under the Administrative Procedures Act (APA)[4] and on due process grounds. In conjunction, Surgery Centers filed a motion to restrain and enjoin the Commission *pendente lite* from instituting the revised schedule. Following a hearing, a circuit court judge granted Surgery Centers' motion for a preliminary injunction; thus, the Commission was ordered to maintain the pre-existing payment schedule pending a determination of the merits of Surgery Centers' original suit.

The Commission appealed and filed a petition for *supersedeas* with the Court of Appeals to stay the *pendente lite* injunction. A single judge denied this petition. The Commission then sought full panel review of the denial of its request for *supersedeas*. After the single judge's decision was affirmed by the full panel, the Commission withdrew its appeal of the circuit court's enjoinment of the new payment schedule. In turn, the Court of Appeals dismissed the appeal.

Subsequently, both parties filed motions for summary judgment. At the hearing on these motions, the parties agreed the underlying facts were not in dispute and the matter presented solely a question of law to be decided by the circuit court.

In prefacing its order, the circuit court stated the "[t]he question before the Court is whether or not the Commission followed the proper procedures established by the laws of the State of South Carolina or complied with the due process clause of the South Carolina Constitution." In answering this question, the circuit court granted each party's motion for summary judgment in part and denied it in part.

Specifically, the court held section 1–23–310(3) of the South Carolina Code, defining a "contested case" that requires a

---

4. S.C.Code Ann. §§ 1–23–10 to –660 (2005 & Supp.2009).

hearing, was inapplicable for several reasons.[5] First, the court noted that the APA "does not itself create the right to a hearing, but instead only provides for procedures to be followed when some other provision of law creates a right to a hearing." Because Surgery Centers had no right required by law, the court concluded the APA did not mandate that Surgery Centers be afforded a hearing prior to the Commission's adoption of the revised payment schedule. Secondly, given the Commission's actions did not involve "rate making," the court concluded there was no "contested case" as that term is used under the APA.

Despite this holding, the court found the Commission was required to promulgate a new regulation that would be subject to the review and approval of the General Assembly. In reaching this conclusion, the court reasoned "the Constitution provides some requirement of notice and an opportunity to be heard in this matter, and that the Commission must adopt a regulation in accordance with the APA." Thus, the court found "[s]uch regulation will provide the type of due process rights required by law and to which [Surgery Centers] are entitled." Furthermore, the court concluded that "a specific regulation was required in order to implement changes to R. 67–1304." The court explained that "[s]uch regulation would contain a defined procedure whereby the methodology for these payments would be established as has been done in Regulations 67–1302 and 1303."

The court, however, concluded that Surgery Centers "do not have any 'property' interest or rights in the payment schedule established by the Commission and are not entitled to any due process rights on those grounds." In so ruling, the court rejected Surgery Centers' contention that a property right was established by the mere fact the revised payment schedule could potentially reduce its earnings by 4.4 million dollars. Notwithstanding this ruling, the court found Surgery Centers would be "afforded appropriate due process protections by the

---

5. Section 1–23–310(3) defines a "contested case" as "a proceeding including, but not restricted to, ratemaking, price fixing, and licensing, in which the legal rights, duties, or privileges of a party are required by law to be determined by an agency after an opportunity for hearing." S.C.Code Ann. § 1–23–310(3) (2005).

adoption of a proper regulation relating to the change of the payment schedule affecting [Surgery Centers]."

Following the issuance of this order, both parties filed motions for reconsideration pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure. With the exception of the correction of a scrivener's error, the court denied each party's motion in full.

Both parties appealed the circuit court's order to the Court of Appeals. Upon request of the parties, this Court certified the appeal from the Court of Appeals pursuant to Rule 204(b) of the South Carolina Appellate Court Rules.

## II. DISCUSSION

### A.

Although Surgery Centers articulate several issues, they essentially argue the circuit court erred in concluding that they were not entitled to due process protections concerning the implementation of the Commission's revised payment schedule. Specifically, Surgery Centers claim the Commission's actions constituted a "contested case" under the APA, thus, warranting the APA hearing procedures. Additionally, Surgery Centers assert they have a substantive property interest in the payment schedule process and that, in turn, Article I, Section 22 of the South Carolina Constitution required the Commission to give notice and provide an opportunity to be heard before adopting the Advisory Committee's recommended schedules.

In contrast, the Commission contends the circuit court erred in holding Surgery Centers had a due process right to have any revision of the payment schedules promulgated in a regulation, while at the same time holding Surgery Centers had no property interest in the payment schedule established by the Commission.

For reasons that will be more thoroughly explained, we agree with the circuit court's findings that Surgery Centers did not establish a right to a "contested case" hearing under the APA and did not have the requisite property interest to invoke our state's constitutional due process protections. We disagree, however, with the circuit court's fundamental holding

that the Commission was required to promulgate a new regulation in order to change the fee payment schedule.

## B.

■ Initially, we believe the circuit court correctly held Surgery Centers did not establish the necessary independent right to a "contested case" under section 1–23–310(3) of the APA.

Significantly, Surgery Centers failed to set forth any specific argument establishing that the Commission's actions fell within the ambit of criteria required for a "contested case." Although they reference the term in their brief, Surgery Centers do not identify the necessary South Carolina or Federal law that would warrant their entitlement to a "contested case" hearing. *See Triska v. Dep't of Health & Envtl. Control,* 292 S.C. 190, 355 S.E.2d 531 (1987) (recognizing that a "contested case" does not exist where there is no requirement deriving from South Carolina or Federal law that there be an opportunity for a hearing).

Furthermore, we do not believe nor do Surgery Centers expressly argue that the Commission's actions involved "ratemaking" or "price fixing" as required by section 1–23–310(3), which defines a "contested case" as "a proceeding including, but not restricted to, ratemaking, price fixing." S.C.Code Ann. § 1–23–310(3) (2005). As the circuit court correctly noted, the "Commission does not determine how much a regulated utility must charge to its customers, or conversely, how much the utility's customers must pay." Moreover, unlike in public utility or regulated industry cases, there is no such statute in the instant case that clearly creates a requirement for a hearing. *Cf.* S.C.Code Ann. § 58–27–870(A) (Supp. 2009) (providing that Public Service Commission "must hold a public hearing concerning the lawfulness or reasonableness of the proposed changes" in electric rates); S.C.Code Ann. § 58–9–540(A) (Supp.2009) (stating Public Service Commission "shall . . . hold a hearing concerning the lawfulness or reasonableness of the [telephone utility] rate or rates").

Our conclusion, however, is not dispositive of this appeal. Instead, we must still consider whether Surgery Centers,

apart from the "contested case" provision of the APA, were entitled to notice and an opportunity to be heard.

## C.

 Unlike the circuit court, we do not believe the Commission was required to promulgate a new regulation and provide Surgery Centers an opportunity to be heard before adopting the Advisory Committee's recommended schedules. Rather, we find the Commission's actions were specifically authorized by existing Regulation 67–1304 and did not implicate the requisite private right to warrant the due process protections of Article I, Section 22 of the South Carolina Constitution.

 In reaching this conclusion we must examine Regulation 67–1304 by utilizing the well-established rules of statutory construction. "The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Hodges v. Rainey,* 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). If a statute's language is plain and unambiguous, and conveys a clear and definite meaning, there is no occasion for employing rules of statutory interpretation and the Court has no right to look for or impose another meaning. *Miller v. Doe,* 312 S.C. 444, 447, 441 S.E.2d 319, 321 (1994).

As a threshold matter, we note that Surgery Centers have never asserted that Regulation 67–1304 was promulgated in violation of their due process rights. Thus, this extant regulation is controlling as to the authority allocated to the Commission.

Based on our review of this regulation, the plain and unambiguous terms authorize the Commission to establish a fee payment system applicable to Surgery Centers. Significantly, subsection A of the regulation, states "The Commission *shall* develop a prospective payment system." 25A S.C.Code Ann. Regs. 67–1304 (Supp.2009) (emphasis added). This legislatively-endorsed mandate permits the Commission to act without the need for additional approval.

Furthermore, we find the circuit court's reliance on section 1–23–110 of the South Carolina Code to be misplaced. In its order, the circuit court concluded that section 1–23–110 "establishes a requirement for a public hearing for proposed

regulations." Based on this conclusion, the circuit court determined that "a specific regulation was required in order to implement changes to R. 67–1304."

We do not interpret section 1–23–110 as being the source for which Surgery Centers have a right to have a regulation promulgated. Rather, the statute merely provides for the procedures that must be followed whenever a regulation is otherwise mandated. Based on our reading of the statute, we discern nothing that establishes when a regulation is required for changes to the Commission's fee payment schedule for ambulatory surgery centers.[6]

Finally, we hold the protections provided by our state Constitution are inapplicable in the instant case. Under our state Constitution, due process in the administrative context has been established by Article I, Section 22.[7] This section provides:

No person shall be finally bound by a judicial or quasi-judicial decision of an administrative agency affecting private rights except on due notice and an opportunity to be heard; nor shall he be subject to the same person for both prosecution and adjudication; nor shall he be deprived of

6. Although not relied upon by the circuit court, we likewise reject Surgery Centers' contention that section 42–3–30 of the South Carolina Code required the Commission to promulgate a regulation in this instance. Section 42–3–30 provides that the Commission "shall promulgate all regulations relating to the administration of the workers' compensation laws of this State necessary to implement the provisions of this title and consistent therewith." S.C.Code Ann. § 42–3–30 (1985). We believe this general code provision merely represents the General Assembly's intent to identify the Commission as the sole authority for the administration of workers' compensation law. Given the absence of a specific statutory provision, we decline to read into section 42–3–30 a requirement that the Commission promulgate a regulation in order to change the fee payment schedule for ambulatory care centers.

7. In terms of our state's general due process protection, Article I, Section 3 provides:

The privileges and immunities of citizens of this State and of the United States under this Constitution shall not be abridged, nor shall any person be deprived of life, liberty, or property without due process of law, nor shall any person be denied the equal protection of the laws.

S.C. Const. art. I, § 3.

*liberty or property* unless by a mode of procedure prescribed by the General Assembly, and he shall have in all such instances the right to judicial review.

S.C. Const. art. I, § 22 (emphasis added).

In explaining this provision, we have stated, "[i]n recognition of the increasing number of governmental powers delegated to administrative agencies, South Carolina Constitution article I, § 22 was added to the 1895 Constitution in 1970 'as a safeguard for the protection of liberty and property of citizens.' " *Ross v. Med. Univ. of S.C.*, 328 S.C. 51, 68, 492 S.E.2d 62, 71 (1997) (quoting *Final Report of the Committee to Make a Study of the South Carolina Constitution of 1895*, p. 21 (1969)).

Although our appellate courts have not always used the term "due process rights" when discussing Article I, Section 22, we have consistently indicated that the protections provided under this section are the equivalent of those afforded by the Due Process Clause of our state and federal Constitutions. *See, e.g., Kurschner v. City of Camden Planning Comm'n*, 376 S.C. 165, 171, 656 S.E.2d 346, 350 (2008) (citing Article I, Section 22 and stating "[p]rocedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment of the United States Constitution. The fundamental requirements of due process include notice, an opportunity to be heard in a meaningful way, and judicial review." (citation omitted)); *Harbit v. City of Charleston*, 382 S.C. 383, 393, 675 S.E.2d 776, 781 (Ct.App.2009) (citing Amendments V and XIV of the United States Constitution and Article I, Section 22 of the South Carolina Constitution and stating "[t]he fundamental requirements of due process under the United States Constitution and the South Carolina Constitution include notice, an opportunity to be heard in a meaningful way, and judicial review").

■ Given the absence of distinction in our jurisprudence, we conclude a traditional due process analysis is required to assess whether the Commission's actions deprived Surgery Centers of constitutionally-protected interests.

Applying this analysis, we hold Surgery Centers have not established the requisite liberty or property interest to invoke the due process protections of Article I, Section 22. Initially, we agree with the circuit court's conclusion that Surgery Centers have no property interest that was implicated by the Commission's revision of the maximum allowable payment schedules. Furthermore, Surgery Centers have not set forth any argument that the result of the Commission's actions implicated a liberty interest. Instead, as we interpret Surgery Centers' argument, they are primarily concerned with receiving future income based on desired future work. The mere desire for future work, however, is not sufficient to constitute a private right. Moreover, we emphasize that Surgery Centers' decision to provide medical care to workers' compensation claimants is entirely voluntary.

Accordingly, we conclude Surgery Centers have failed to establish any private right that warrants the protections provided in Article I, Section 22. *See* 16C C.J.S. *Constitutional Law* § 1516 (2010) ("[A]n interest in property which is protected by due process arises only when there is a legitimate claim of entitlement, as created and defined by independent sources, and a person clearly must have more than an abstract need or desire for it, and the person must have more than a unilateral expectation of it."); *see also Am. Soc'y of Cataract & Refractive Surgery v. Thompson,* 279 F.3d 447 (7th Cir. 2002) (holding physicians providing Medicare services had no protected property interest in statutory transition formula used to determine practice expense relative value units as a component of a Medicare physician fee schedule); *Painter v. Shalala,* 97 F.3d 1351 (10th Cir.1996) (concluding physicians, who voluntarily participated in Medicare program, failed to demonstrate a legitimate property interest in having reimbursement payments calculated in a specific manner).

■ Our conclusion should not be interpreted as providing the Commission with "unfettered authority" to adjust the reimbursement rate. If Surgery Centers believe that the authorized payment for services rendered is inadequate, they may invoke the due process protections afforded by the Commission. *See* 25A S.C.Code Ann. Regs. 67–1305 (Supp.2009) (outlining appellate procedures for when a medical provider

disagrees, based on Commission payment policy, with a charge reduction).

Furthermore, to the extent Surgery Centers claim our decision will in essence provide all state agencies with unlimited authority, we find this concern to be unfounded. Given the analysis outlined in the opinion, we emphasize our decision is controlled by specific statutory and regulatory provisions at issue in the instant case. Thus, our holding should not be construed as advocating for state agencies to exceed the authority granted to them by the General Assembly. *See Bazzle v. Huff*, 319 S.C. 443, 445, 462 S.E.2d 273, 274 (1995) ("An administrative agency has only such powers as have been conferred by law and must act within the authority granted for that purpose."); *Captain's Quarters Motor Inn, Inc. v. S.C. Coastal Council*, 306 S.C. 488, 490, 413 S.E.2d 13, 14 (1991) (stating that "[a]s a creature of statute, a regulatory body is possessed of only those powers expressly conferred or necessarily implied for it to effectively fulfill the duties with which it is charged").

## III. CONCLUSION

Based on the foregoing, we affirm the circuit court's findings that Surgery Centers did not establish a right to a "contested case" hearing under the APA and did not have the requisite property interest to invoke our state's constitutional due process protections. We, however, reverse the circuit court's holding that the Commission was required to promulgate a new regulation in order to change the fee payment schedule. In light of our decision, we lift the *pendente lite* order enjoining the Commission from instituting the new payment schedule.

**AFFIRMED IN PART AND REVERSED IN PART.**

TOAL, C.J. and PLEICONES, J., concur. HEARN, J., dissenting in a separate opinion in which KITTREDGE, J., concurs.

Justice HEARN.

I respectfully dissent and would affirm the decision of the circuit court. In my opinion, the Workers Compensation

Commission (Commission), when changing the reimbursement rate for ambulatory surgery centers in a manner that substantially alters the prior rate, must afford notice and an opportunity to be heard to those affected by the change. The proper means to achieve notice and an opportunity to be heard is by requiring these revisions to be promulgated through regulations submitted to the General Assembly for its approval, and I would require the Commission to do so in this case.

Although both sides agree this issue should be decided as a matter of law, both disagree with the decision of the circuit court. Surgery Centers argue the circuit court erred in finding they did not have the right to a contested case under Section 1–23–310(3).[8] Conversely, the Commission contends the circuit court erred in holding Surgery Centers had a right to have any revision of the schedules promulgated in a regulation, while at the same time holding Surgery Centers had no property interest in the payment schedule established by the Commission. Unlike the majority, I would find no error, because I believe the right to notice and a hearing claimed by Surgery Centers does not hinge on the existence of a liberty or property interest.

Section 42–3–30 of the South Carolina Code (1985) requires the Commission to promulgate regulations relating to the administration of the workers' compensation laws of this State. Section 1–23–110 of the South Carolina Code (2005 & Supp. 2009) provides that, before the Commission promulgates a regulation, it must publicize notice of the change, detailing an address where interested persons may submit written comments before the regulations are tendered to the General Assembly. Thus, generally speaking, section 42–3–30 requires

8. I agree with the majority that the circuit court correctly held Surgery Centers did not establish the necessary independent right to a contested case under section 1–23–310(3). *See Triska v. Dep't of Health and Envtl. Control,* 292 S.C. 190, 196–97, 355 S.E.2d 531, 534 (1987) (stating a contested case does not exist where there is no requirement deriving from South Carolina or Federal law that there be an opportunity for a hearing). However, that ruling does not foreclose Surgery Centers' right to notice and an opportunity to be heard on other grounds, as set forth herein. *See Stono River Envtl. Prot. Ass'n v. S.C. Dep't of Health and Envtl. Control,* 305 S.C. 90, 94, 406 S.E.2d 340, 342 (1991) (finding parties are entitled to notice and an opportunity to be heard, apart from the APA, under article 1, section 22 of our Constitution).

the Commission to promulgate regulations for matters affecting workers' compensation programs in this state, and section 1–23–110 requires the Commission to give notice before promulgating a regulation and provide interested individuals with the opportunity to be heard. Therefore, pursuant to the statutes detailed above, I believe the Commission is required to give notice and provide for an opportunity to be heard before adopting the new schedules contained in the recommendations of the Hospital Advisory Committee.

The Commission maintains, and the majority holds, the necessary regulation authorizing its conduct has already been promulgated in regulation 67–1304. Following this reasoning, the Commission's conduct in commissioning the Advisory Committee to study the situation, then subsequently adopting its recommendations, is simply fulfilling the directive of regulation 67–1304, albeit nine years later. Additionally, the Commission cites the affidavit of its Executive Director, Gary Thibault, wherein he stated that since 1984, "in each case where the Commission has established a new or revised schedule of maximum allowable payments for services, the Commission did so by a vote of the Full Commission at a monthly Business Meeting." The mere fact that this practice has existed, without apparent challenge until today, is, in my opinion, not dispositive of its legitimacy.

Furthermore, "there is a basic presumption that the legislature has knowledge of previous legislation as well as of judicial decisions construing that legislation when later statutes are enacted concerning related subjects." *Whitner v. State,* 328 S.C. 1, 6, 492 S.E.2d 777, 779 (1997) (citing *Berkebile v. Outen,* 311 S.C. 50, 426 S.E.2d 760 (1993); 82 C.J.S. *Statutes* § 316, at 541–42 (1953)). Therefore, absent specific language in regulation 67–1304, or other qualifying statute, that authorizes the Commission to act in the revision of these maximum allowable payment schedules for ambulatory surgery centers without promulgating a new regulation as provided in sections 42–3–30 and 1–23–110, this Court must presume the General Assembly intended the Commission to promulgate a regulation in this matter. Instead, the majority reads a mandate in favor of the Commission that does not expressly exist within the plain and unambiguous terms of regulation 67–1304: instead of adhering to the general rule that all changes in the administration of

Workers' Compensation must be accomplished through the promulgation of regulations, the majority holds that a legislative directive contained in a prior regulation absolves the Commission in perpetuity from thereafter complying with an express statute. Importantly, although regulations authorized and adopted by the General Assembly generally have the force of law, a regulation may not alter or add to an existing statute. *See Goodman v. City of Columbia,* 318 S.C. 488, 490, 458 S.E.2d 531, 532 (1995) (stating that insofar as a regulation added a requirement to a statute, the specifications set forth in the statute must prevail). Therefore, even assuming such a "mandate" can be read into regulation 67–1304, it is invalid insofar as it could be interpreted to permit the Commission to act absent promulgation of a regulation under section 42–3–30.

Moreover, article 1, section 22 of the South Carolina Constitution, which was adopted by the General Assembly in 1970, provides: "No person shall be finally bound by a judicial or quasi judicial decision of an administrative agency [9] affecting private rights except on due notice and an opportunity to be heard ... and he shall have in all such instances the right to judicial review." Commenting on the basis for the recommended addition of section 22, the Committee authorized to make proposals to change the existing Constitution stated:

> More and more governmental decisions are being made under powers delegated to administrative divisions of State Government. In many cases, the decisions of administrative divisions are more significant than laws enacted by the General Assembly or decisions made by the courts. The Committee agrees with many other constitutional study groups throughout the country that judicial and quasi-judicial decisions of administrative agencies should be consistent with due process of law and complete fairness to the citizen. This provision is recommended as a safeguard for the protection of liberty and property of citizens.

*Final Report of the Committee to Make a Study of the South Carolina Constitution of 1895,* p. 21 (1969).

---

9. The Commission qualifies as an agency under section 1–23–10(1) of the South Carolina Code (2005). (providing an " '[a]gency' or 'State agency' means each state board, commission, department, executive department or officer ... authorized by law to make regulations or to determine contested cases").

I agree with the majority that the circuit court correctly found Surgery Centers had no "property" interest that was implicated by the Commission's revision of the maximum allowable payment schedules, in the sense that Surgery Centers had no right to a guaranteed payment schedule at the discount rate of 12.1 percent. In order to determine the effect of Surgery Centers' lack of a cognizable property interest on their entitlement to notice and an opportunity to be heard under article 1, section 22, it is imperative that this Court examine the source of these private rights. While the circuit court, the parties, and the majority by acquiescence, have denominated the rights sought by Surgery Centers as "due process rights," I believe a closer examination reveals the label to be incorrect. In previous cases, this Court has been inconsistent in the manner in which it has labeled rights flowing from article 1, section 22 of our State Constitution. In some cases, we have referred to the guarantees of notice and the right to be heard emanating from article 1, section 22 as "due process rights." *See League of Women Voters of Georgetown County v. Litchfield–by–the–Sea*, 305 S.C. 424, 426–27, 409 S.E.2d 378, 380 (1991) (overruled on specific grounds by *Brown v. S.C. Dep't of Health and Envtl. Control*, 348 S.C. 507, 560 S.E.2d 410 (2002); *Garris v. Governing Bd. of S.C. Reinsurance Facility*, 333 S.C. 432, 444, 511 S.E.2d 48, 54 (1998)). In other cases, the Court has, without calling them "due process rights," simply stated article 1, section 22 guarantees "persons the right to notice and an opportunity to be heard by an administrative agency...." *Ross v. Medical Univ. of S.C.*, 328 S.C. 51, 68, 492 S.E.2d 62, 71 (1997).

I do not think the rights guaranteed under article 1, section 22 are the same as those classically protected under the Due Process Clause of our State and National Constitutions. *See* U.S. Const. amend. XIV § 1; S.C. Const. art. V, § 5 (stating no person shall be deprived of life, liberty, or property without due process of law). Even if the Court has referred to the rights under article 1, section 22 as "due process rights," for claims under section 22, we have neither focused on, nor required the existence of a liberty or property interest, in the sense of a prerequisite to the Court's analysis of claims under the Due Process Clause. *Stono River Envtl. Prot. Ass'n v. S.C. Dep't of Health and Envtl. Control*, 305 S.C. 90, 94, 406

S.E.2d 340, 342 (1991); *League of Women Voters of Georgetown County,* 305 S.C. at 426–27, 409 S.E.2d at 380; *Ross,* 328 S.C. at 68, 492 S.E.2d at 71; *Garris,* 333 S.C. at 444, 511 S.E.2d at 54.

As stated above, I recognize the right to notice and an opportunity to be heard are typically identifiable with rights incident to the Due Process Clause of the Fourteenth Amendment. *See Clear Channel Outdoor v. City of Myrtle Beach,* 372 S.C. 230, 235, 642 S.E.2d 565, 567 (2007) ("Due process requires (1) adequate notice; (2) adequate opportunity for a hearing; (3) the right to introduce evidence; and (4) the right to confront and cross-examine witnesses."). However, in this case, the right of Surgery Centers to notice and an opportunity to be heard emanates, not from the Due Process Clause, but from article 1, section 22 of our State Constitution and from section 1–23–110. Therefore, because the rights in this case do not flow from the Due Process Clause, I believe it unnecessary, as the majority has done, to employ a traditional due process analysis to determine whether Surgery Centers' constitutionally protected interests have been deprived. *See Sloan v. S.C. Bd. of Physical Therapy Exam'rs,* 370 S.C. 452, 483, 636 S.E.2d 598, 614 (2006) (stating in order for due process rights to attach, a party must show that he was arbitrarily and capriciously deprived of a cognizable property interest rooted in state law).

Instead, I would look solely to the process through which the Commission enacted its new prospective payment system for Surgery Centers. In my view, the Commission's actions in forming the Advisory Committee to study, develop, and propose a new prospective payment system for outpatient hospital services and the services rendered by ambulatory surgical centers, and the Commission's subsequent adoption of the Advisory Committee's proposal, all without the proper notice and opportunity to be heard by Surgery Centers, constitute *exactly* the sort of quasi judicial decision section 22 was intended to address.

Finally, I am not persuaded that the General Assembly intended to provide the Commission with unfettered authority to adjust this reimbursement rate in perpetuity without affording the safeguards which attach to provisions promulgated

within the framework of the regulatory process. Consequently, I would vote to affirm the circuit court's determination that Surgery Centers are entitled to the proper notice and opportunity to be heard under section 1–23–110. Under out State's jurisprudence, should the Commission want to establish a new prospective payment system it should do so by promulgating a new regulation subject to the participation of interested parties under sections 42–3–30 and 1–23–110, and the subsequent adoption by the General Assembly.

KITTREDGE, J., concurs.