725 S.E.2d 480

SOUTH CAROLINA DEPARTMENT
OF REVENUE, Respondent,

v.

BLUE MOON OF NEWBERRY, INC., d/b/a
Blue Moon Sports Bar, Petitioner.

No. 27106.

Supreme Court of South Carolina.

Heard Feb. 8, 2012.

Decided April 4, 2012.

Rehearing Denied May 4, 2012.

Richard J. Breibart, The Law Firm of Richard Breibart, of Lexington, for Petitioner.

Harry A. Hancock, S.C. Dept. of Revenue, of Columbia, for Respondent.

Justice HEARN.

The State Law Enforcement Division (SLED) conducted a sting operation on the Blue Moon Sports Bar, a private club operated by Blue Moon of Newberry, Inc. After SLED's investigation, the Department of Revenue concluded Blue Moon's guest policy violated Section 7–401.4(J) through (K) of the South Carolina Code of Regulations and revoked Blue Moon's liquor license. The Administrative Law Court (ALC) reinstated Blue Moon's license, and the court of appeals reversed. *S.C. Dep't of Revenue v. Blue Moon of Newberry, Inc.*, 387 S.C. 467, 473, 693 S.E.2d 21, 24 (Ct.App.2010). We granted a writ of certiorari and now reverse the decision of the court of appeals.

## FACTUAL/PROCEDURAL BACKGROUND

Blue Moon is a sports bar located in Newberry, South Carolina, and it is incorporated as a nonprofit corporation. As such, it is subject to the provisions concerning the sale of alcoholic beverages by nonprofit organizations found in Regulation 7–401.4. Specifically, the regulation states that "[o]nly bona fide members and bona fide guests of members of such organizations may consume alcoholic beverages ... upon the licensed premises." 1 S.C.Code Ann. Regs. 7–401.4(J) (2011). The regulation further provides, "Bona fide guests shall be limited to those who accompany a member onto the premises or for whom the member has made prior arrangements with the management of the organization." *Id.* § 7–401.4(K).

To test Blue Moon's compliance with these regulations, SLED conducted an operation wherein Agent Quincy Ford went undercover and attempted to gain access to Blue Moon as a guest. Agent Ford's first attempt was rebuffed by Blue Moon's bouncer when Agent Ford admitted he was not a member of the organization. However, the bouncer directed Agent Ford's attention to a sign which contained a telephone number and told Agent Ford that he would be allowed to enter if he called that number.[1]

---

1. The sign read, "If You Are Not A Member Call Before You Get To The Door 276–* * * *."

Agent Ford called the number as directed, which was the telephone number for Blue Moon. Steve Malone, who is both a member and employee of Blue Moon, answered Agent Ford's call. It is undisputed that Agent Ford did not know Malone or have any prior relationship with him whatsoever. However, Denise Polifrone, who is Blue Moon's owner and license holder, had given Malone authority to admit people who called as his guests.[2] Approximately two to three minutes after he spoke with Malone and gave Malone his name, Agent Ford returned to the door. He showed the bouncer his civilian identification and said he had called the number on the sign. The bouncer then let Agent Ford enter the bar after he paid a small cover charge.

Once inside, Agent Ford ordered an alcoholic beverage, paid for it, and consumed a small portion of it. He subsequently called in Agent James Causey, the SLED agent in charge of the operation. Agent Causey arrived and issued Polifrone a citation for permitting someone who was not a bona fide member or guest to consume alcohol on-premises. As a result, the Department revoked Blue Moon's liquor license.[3]

Blue Moon requested a contested case hearing before the ALC, and the only issue before the court was whether Agent Ford was a bona fide guest within the meaning of Regulation 7–401.4(K). In finding that he was, the ALC concluded there is no requirement that the prior arrangement with management for the admission of the guest be made any specific period of time in advance. The ALC also cited the prior administrative law case of *South Carolina Department of Revenue v. Mir, Inc.*, No. 04–ALJ–17–0409–CC (S.C.Admin.Law.Ct. May 31, 2005), for the proposition that there also need not be any pre-existing social relationship between the member and the guest. Accordingly, the ALC found Agent Ford's conversation with Malone constituted a prior arrangement with management and Agent Ford was thus a bona fide

---

**2.** Polifrone testified that she discussed this set-up with individuals from SLED and the Department, all of whom said this arrangement was permissible.

**3.** It appears this was Blue Moon's third offense. Blue Moon did not challenge the prior two offenses because its liquor license was not at stake and it was easier to just pay the fine.

guest within the literal meaning of Regulation 7–401.4(K). The ALC therefore denied the Department's request to revoke Blue Moon's license.

On the Department's appeal to the court of appeals, a majority of the panel first distinguished *Mir, Inc.* on the ground that it concerned whether the member accompanied the guest onto the premises, not whether prior arrangements were made with management. *Blue Moon*, 387 S.C. at 472, 693 S.E.2d at 23. The court further held the ALC examined the term "prior arrangement" without regard to the regulation's purpose. *See id.* According to the court, "[t]he stated purpose of the regulation is to ensure that only bona fide members of private clubs and their bona fide guests purchase and consume alcoholic beverages at those clubs." *Id.* at 472–73, 693 S.E.2d at 24. When read in this context, the court held giving Regulation 7–401.4(K) the broad reading given to it by the ALC "would eviscerate that purpose." *Id.* at 473, 693 S.E.2d at 24. Hence, the court found the ALC erred in concluding Agent Ford was a bona fide guest and granted the Department's request to revoke Blue Moon's license. *Id.* Judge Pieper dissented, writing that the Department must abide by the plain language of the regulation it promulgated. *Id.* at 474, 693 S.E.2d at 24 (Pieper, J., dissenting).

We granted a writ certiorari to review the decision of the court of appeals.

## LAW/ANALYSIS

Blue Moon argues the court of appeals erred in holding Agent Ford did not meet the definition of a bona fide guest in Regulation 7–401.4(K). Because we believe the court of appeals erred in going beyond the regulation's plain language, we agree.

 "The construction of a regulation is a question of law to be determined by the court." 2 Am.Jur.2d *Administrative Law* § 245. We will correct the decision of the ALC if it is affected by an error of law, S.C.Code Ann. § 1–23–380(5)(d) (Supp.2010), and questions of law are reviewed de novo, *Town of Summerville v. City of N. Charleston*, 378 S.C. 107, 110, 662 S.E.2d 40, 41 (2008). Although our review of these questions is de novo, we will generally give deference to an agency's

interpretation of its own regulation. *Brown v. Bi–Lo, Inc.,* 354 S.C. 436, 440, 581 S.E.2d 836, 838 (2003). Nevertheless, we will reject the agency's interpretation if it is contrary to the regulation's plain language. *See id.*

 Regulations are construed using the same canons of construction as statutes. *S.C. Ambulatory Surgery Ctr. Ass'n v. S.C. Workers' Comp. Comm'n,* 389 S.C. 380, 389, 699 S.E.2d 146, 151 (2010). Accordingly, "[t]he words of a regulation must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the regulation's operation." *Byerly v. Connor,* 307 S.C. 441, 444, 415 S.E.2d 796, 799 (1992). Furthermore, the regulation must be construed as a whole rather than read in its component parts in isolation. *Spruill v. Richland Cnty. Sch. Dist. 2,* 363 S.C. 61, 64, 609 S.E.2d 524, 526 (2005). However, if applying the regulation's plain language would lead to an absurd result, we will interpret the regulation in a manner which avoids the absurdity. *See Cabiness v. Town of James Island,* 393 S.C. 176, 192, 712 S.E.2d 416, 425 (2011). "A merely conjectural absurdity is not enough; the result must be 'so patently absurd that it is clear that the [General Assembly] could not have intended such a result.' " *Id.* (quoting *Harris v. Anderson Cnty. Sheriff's Office,* 381 S.C. 357, 363 n. 1, 673 S.E.2d 423, 426 n. 1 (2009)).

 The South Carolina Constitution grants the General Assembly the power to issue alcoholic beverage licenses to two types of establishments: (1) "businesses which engage primarily and substantially in the preparation and serving of meals or furnishing of lodging," and (2) "certain nonprofit organizations with limited membership not open to the general public." S.C. Const. art. VIII–A, § 1. The General Assembly has in turn defined a nonprofit organization for these purposes as "an organization not open to the general public, but with a limited membership and established for social, benevolent, patriotic, recreational, or fraternal purposes."[4] S.C.Code

---

4. Before the ALC, the Department attempted to elicit testimony from Polifrone that Blue Moon was not a valid nonprofit for alcoholic beverage purposes. However, the court prevented the Department from doing so upon Blue Moon's objection that this question was not before it. The Department did not appeal this issue to the court of

Ann. § 61–6–20(6) (2009). Similarly, the General Assembly provided that "[a] nonprofit organization which is licensed by the [D]epartment pursuant to the provisions of this article may sell alcoholic liquors by the drink. A member or guest of a member of a nonprofit organization may consume alcoholic liquors sold by the drink upon the premises...." *Id.* § 61–6–1600(A).

The Department has interpreted [5] section 61–6–1600 as being evidence of the General Assembly's intent

that a license shall not be granted to or held by an organization which is, or has been, organized and operated primarily to obtain or hold a license to sell alcoholic beverages, but only to bona fide nonprofit organization with limited membership to which the sale of alcoholic beverages is incidental to the main purpose of the organization.

1 S.C.Code Ann. Regs. 7–401.4(A) (2011).

To that end, the Department promulgated the two subsections of Regulation 7–401.4 at the heart of this case:

J. Only bona fide members and bona fide guests of members of such organizations may consume alcoholic beverages ... upon the licensed premises.

K. Bona fide guests shall be limited to those who accompany a member onto the premises or for whom the member has made prior arrangements with the management of the organization.

The question presently before us is whether Agent Ford was a bona fide guest when he was able to call a number posted near the door and obtain permission to enter from a member with whom he had no prior relationship.

Based on the plain language of Regulation 7–401.4(K), we hold Agent Ford was a bona fide guest. Subsection (K) specifically prohibits on-premises consumption of alcohol by a non-member unless he is either personally accompanied onto the premises by a member or a member has made a prior arrangement with management for him. By its own terms,

---

appeals, and therefore we must assume Blue Moon meets these requirements.

**5.** Section 61–2–60 of the South Carolina Code (2009) grants the Department authority to promulgate regulations under Title 61.

Regulation 7–401.4(K) imposes no other requirements. In this case, Agent Ford was not accompanied into Blue Moon by a member. Instead, prior to entering the premises and consuming his drink, he spoke with a member who was authorized by management to permit guests to enter. Thus, Agent Ford was a bona fide guest within the letter of the regulation.

The Department does not dispute the ALC's conclusion that Agent Ford technically had a prior arrangement with management. Instead, it argues subsection (K) does not actually define who is a bona fide guest. The Department's view is that it merely limits admission to a certain subset of bona fide guests, i.e., one must be a bona fide guest *and* either be accompanied by a member or make prior arrangements with management. In our opinion, subsection (K) does no such thing but rather simply defines what constitutes a bona fide guest.

Furthermore, the regulation's plain language is wholly consistent with the definition of bona fide. Bona fide means "[m]ade in good faith" and "without fraud or deceit," or "sincere" and "genuine." Black's Law Dictionary 75 (3d pocket ed.). As the court recognized in *Mir, Inc.*, "the regulation precludes a private club from accepting the 'word' of an individual that he is a guest of a member without verification from the member, but allows the club to accept a person as a bona fide guest if his status is confirmed by the presence or prior notification of a member." No. 04–ALJ–17–0409–CC. Thus, the requirement that a guest be bona fide is to ferret out those who might feign the approval of a member by mandating that the guest either be accompanied by a member or have the member personally make prior arrangements for him with management. If he meets either of these criteria, he is a true guest—he has his bona fides [6] by actually being invited by a member—and not someone who has faked a member's invitation.

Nevertheless, the Department contends the term bona fide implies that the guest have some degree of familiarity or camaraderie with the member, as does the dissent, or an

---

6. "Vernon here's got a job. Vernon's got prospects. He's bona fide. What are you?" O Brother, Where Art Thou? (Touchstone Pictures 2000).

allegiance to the organization's purpose. However, the plain language of the regulation contains no support for this, and the ordinary definition of bona fide does not require it. Thus, adopting the Department's and the dissent's view would be an improper narrowing of the regulatory definition based on some notion of what a bona fide guest *should* be, not what the regulation actually provides. *See Byerly*, 307 S.C. at 444, 415 S.E.2d at 799 (1992) ("[T]he words of a regulation must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the regulation's operation."). For us to do so therefore would require the abdication of our role as the interpreter of a regulation and the assumption of the position of a drafter.

Moreover, such a construction would prove utterly unworkable. Because Regulation 7–401.4(K) uses the term bona fide generally, we would only be able to adopt the vague standards above. Accordingly, we would be in no position to say how much of a relationship is sufficient or what quantum of adherence to the organization's mission passes muster.[7] Additionally, the oral arguments before us amply demonstrated that this interpretation would undoubtedly lead down the slippery slope of the Department assessing the subjective relationship between the member and his guest or the guest's adherence to the mores and values of the organization.[8] Under the Department's view, each private club's guest policy thus would be subject to the uncertain whim of the Department as to what threshold of connection is necessary. This would be of little comfort to organizations which are trying to ensure their practices comply with controlling regulations.

We therefore agree with the sentiment expressed by Judge Pieper in his dissent at the court of appeals:

7. Enforcement of this latter requirement would pose a particularly vexing challenge for organizations, as an undercover officer entering solely to investigate their guest policies, as Agent Ford did at Blue Moon, could never be a bona fide guest because he would not share in their beliefs.

8. The dissent's contention that we need not enter this fray because Agent Ford and Malone were complete strangers presupposes some prior relationship is required under Regulation 7–401.4(K). For the reasons stated above, we disagree.

> If the Department of Revenue has an issue with how the regulation itself defines "bona fide guest," then it may promulgate a new regulation as appropriate upon proper notice to the public. Until then, other businesses which follow the unambiguous language of the regulation should not be punished as a result.

*Blue Moon,* 387 S.C. at 474, 693 S.E.2d at 24 (Pieper, J., dissenting). As he correctly points out, many organizations have relied upon the plain language of Regulation 7–401.4(K) and it would be improper for us to come in now and alter its terms.

Accordingly, we hold Blue Moon has complied with the plain language of the regulation, and we are not in a position to judicially engraft the requirements sought by the Department. However, the court of appeals held that to give bona fide guest this broad reading would "eviscerate" the purpose of the regulation, which is to limit those who may consume alcohol on the premises of private clubs. *Id.* at 473, 693 S.E.2d at 24 (majority opinion). In essence, the argument is that sanctioning Blue Moon's guest policy would be an absurd result as it effectively allows a private club to be open to the public. While we are cognizant of the fact that the plain language of Regulation 7–401.4(K) may permit some organizations to push the envelope on what it means to be "private," we are not convinced the result is so absurd that we can ignore the regulation's plain language.

Without a doubt, the current statutory and regulatory scheme evinces a policy of restricting who can consume alcohol on the premises of a private club. *See* S.C.Code Ann. § 61–6–20(6) (defining nonprofit organization as one "not open to the general public, but with a limited membership and established for social, benevolent, patriotic, recreational, or fraternal purposes"); S.C.Code Ann. Regs. 7–401.4(A) (stating licenses shall be granted only to those nonprofit organizations "with limited membership to which the sale of alcoholic beverages is incidental to the main purpose of the organization" and not to one "which is, or has been, organized and operated primarily to obtain or hold a license to sell alcoholic beverages"). Our constitution also draws a distinction between private clubs, and restaurants and hotels serving the public. S.C. Const. art. VIII–A, § 1 ("[L]icenses may be granted to sell and

consume alcoholic liquors and beverages on the premises of businesses which engage primarily and substantially in the preparation and serving of meals or furnishing of lodging *or* on the premises of certain nonprofit organizations with limited membership not open to the general public . . . . " (emphasis added)).

However, the statutes and regulations also envision guests being able to participate in the functions of a private club. *See* S.C.Code Ann. § 61–6–1600(A) ("A member or a guest of a member of a nonprofit organization may consume alcoholic liquors . . . ."); S.C.Code Ann. Regs. 7–401.4(J) ("Only bona fide members and bona fide guests of members of such organizations may consume alcoholic beverages . . . ."). Indeed, guests play an important part in any private club, not only through the possibility that they may join and increase the membership rolls but also in that they routinely participate in the organization's functions and support its missions. We also cannot lose sight of the fact that the consumption of alcohol is supposed to be incidental to the main purpose of the organization. A strict guest rule aimed solely at curbing the consumption of alcohol, a secondary objective, may prevent others from participating in the organization's activities and actually hinder the achievement of its primary goals. We are therefore not convinced that permitting a liberal guest policy is so patently absurd that the General Assembly would not have intended it or it would run afoul of the constitution.

In conclusion, we hold the court of appeals erred in going beyond the plain language of the regulation. Based on the literal terms of Regulation 7–401.4(K), Agent Ford was a bona fide guest because a member made prior arrangements with management. Contrary to the dissent's assertion, we do not "sanction" Blue Moon's practice; we merely hold its policy comports with the plain language of the regulation. If the Department desires stricter standards, it is certainly at liberty to revise Regulation 7–401.4(K) accordingly.

## CONCLUSION

For the foregoing reasons, we reverse the decision of the court of appeals and find Blue Moon complied with the plain language of Regulation 7–401.4(K). Accordingly, we deny the

Department's request to revoke Blue Moon's license. Because our resolution of this question is dispositive, we decline to address the other issues on which we granted certiorari.

PLEICONES and BEATTY, JJ., concur.

KITTREDGE, J., dissenting in a separate opinion in which TOAL, C.J., concurs.

Justice KITTREDGE.

Because I believe the court of appeals correctly analyzed and decided this case, I respectfully dissent. The question presented is whether Agent Quincy Ford was a "bona fide" guest of a member of the Blue Moon Sports Bar when he gained entry to the private club. In my judgment, Agent Ford clearly was not a bona fide guest. As the majority of the court of appeals noted, construing the applicable regulation as giving Agent Ford the imprimatur of a bona fide guest "would eviscerate" its purpose. *S.C. Dep't of Rev. v. Blue Moon of Newberry, Inc.*, 387 S.C. 467, 473, 693 S.E.2d 21, 24 (Ct.App. 2010). I agree and would affirm the court of appeals.

The facts are not in dispute. Blue Moon placed an advertisement outside its door indicating the telephone number to call for admission. Agent Ford was stopped by the doorman when he attempted to enter the bar. The doorman instructed Agent Ford to call the telephone number posted so that Agent Ford could gain permission to enter the bar. Agent Ford called the number and spoke to Steve Malone, who is a Blue Moon employee and member. Malone gave Agent Ford, a complete stranger, permission to enter the bar. The doorman allowed Agent Ford into the bar, and Agent Ford purchased and drank an alcoholic beverage.

In reversing the court of appeals, rejecting the agency's interpretation of its own regulation and holding that Agent Ford was a bona fide guest, the Court claims it is applying the plain language of the regulation. I believe the plain language and meaning of Regulation 7–401.4(K) compels a finding that Agent Ford was not a bona fide guest. Although I do not disagree with the majority regarding the potential "slippery slope of the Department assessing the subjective relationship between the member and his guest," this case is far removed

from any slippery slope. The fact that applying the regulation may prove problematic in another case does not justify reversal of the court of appeals under these facts. Here, we need not struggle with notions of "subjective relationship" or otherwise, for Agent Ford and Malone had no relationship at all.

The agency's interpretation of Regulation 7–401.4(K) is not only entitled to deference, it is also in accord with common sense when applied to the undisputed facts of this case. Moreover, the agency's interpretation of the regulation is consistent with the South Carolina Constitution. *See* S.C. Const. art. VIII–A, § 1 ("[L]icenses may be granted to sell and consume alcoholic liquors and beverages ... on the premises of certain nonprofit organizations with limited membership not open to the general public...."). Yet today, the Court sanctions a sham practice that effectively transforms a purported private, nonprofit establishment into one open to the public.

TOAL, C.J., concurs.