758 S.E.2d 737

**BE MI, INC. d/b/a St. Clements Beach Bar & Grill, Respondent,**

v.

**SOUTH CAROLINA DEPARTMENT OF REVENUE,**

and

**St. Clements Homeowners Association, Intervenor,**

**Of whom St. Clements Homeowners Association is the Appellant,**

and

**South Carolina Department of Revenue is the Respondent.**

Appellate Case No. 2012–212861.

No. 5233.

Court of Appeals of South Carolina.

Heard April 9, 2014.

Decided May 28, 2014.

---

James J. Corbett, of Holler, Garner, Corbett, Ormond, Plante & Dunn, of Columbia, for Appellant.

Clifford Leon Welsh, of Welsh & Hughes, of North Myrtle Beach, for Respondent Be Mi, Inc.

Kathryn Ray Brown, Sean Gordon Ryan, Harry T. Cooper, Jr., and Milton Gary Kimpson, all of Columbia, for Respondent South Carolina Department of Revenue.

KONDUROS, J.

St. Clements Homeowners Association (the Homeowners Association) appeals the administrative law court's (ALC) decision that Be Mi, Inc. met the requirements for a restaurant liquor by the drink license. It contends Be Mi does not meet the seating requirements because some of the seats counted are in common areas and other seats are bar stools at a rail. It also asserts Be Mi does not have control over the deck, where many of its seats are located, and does not have a lease for the deck space. We affirm.

## FACTS

In 1988, Be Mi purchased a snack and pool bar, known as St. Clements Beach Bar & Grill, located in the St. Clements

condominium/hotel complex in Myrtle Beach. Raymond Luke Goude is the sole owner and officer of Be Mi. Be Mi has had a beer and wine license as well as a restaurant liquor by the drink license since 1991.[1] At that time, the developer of the complex was the president of the Homeowners Association. The developer and another board member allowed Be Mi to expand by adding a covered wooden deck on top of two parking spaces. There is no seating available inside the bar.

On March 6, 2007, the Homeowners Association filed for an injunction to have Be Mi remove the deck it built. On December 20, 2010, the Master–in–Equity denied the Association's claim for an injunction and ordered that Be Mi had the right to retain and maintain the side deck. The Association appealed that decision to this court.

On May 19, 2011, Be Mi applied to the South Carolina Department of Revenue (the DOR) for the renewal of its beer and wine permit and its restaurant liquor by the drink license. On May 24, 2011, DOR denied the application due to a valid public protest by the Homeowners Association. Be Mi protested the denial. South Carolina Law Enforcement Division (SLED) reviewed and investigated Be Mi's application. On September 30, 2011, the DOR confirmed the denial because of the valid public protest and because Be Mi failed to be engaged primarily and substantially in the preparation and service of meals. However, the DOR gave Be Mi the opportunity to correct the deficiencies. On October 27, 2011, Be Mi filed a request for a contested case hearing with the ALC. Following a second visit, SLED determined Be Mi met the requirements for a restaurant liquor by the drink license. The DOR withdrew the portion of its denial relating to Be Mi not meeting the requirements but determined the license still had to be denied due to the valid public protest.

The Homeowners Association filed a motion to intervene in the contested case, which the ALC granted. The ALC held a hearing on January 4, 2012, and the Homeowners Association agreed that it was not protesting the beer and wine permit. Goude testified Be Mi provided seating for forty people simultaneously at tables: twenty chairs at tables on the deck,

---

1. Prior to that, the licenses had been in the Homeowners Association's name since the bar opened for business.

eighteen chairs at tables on the roof, and bar stool space for four to six customers at a wide rail on the deck. Goude stated that Be Mi had purchased forty chairs for its use and the Association had twenty chairs to be used by guests poolside. He provided Be Mi owned the rooftop area as a limited common area. He indicated two stools in a picture provided by the Homeowners Association were located off of the deck but could be moved to the other side of the rail and be on the deck and would not affect his use.

Barbara Brown, an owner of one of the units at St. Clements and former board member of the Homeowners Association, testified that currently eighteen chairs were on the roof but there had previously only been twelve chairs. She did not believe more than twelve people could sit there comfortably. She also testified that typically sixteen tables were on the deck and it was not reasonable to seat twenty people there. She contended the Homeowners Association was protesting the license because people had complained of Goude asking them if they had brought their own food and drinks while sitting on the deck or around the pool. She stated "they didn't think they should be asked or didn't like being asked." She testified the Homeowners Association was protesting the license because Goude was "patrolling the area and making it like these was [sic] the premise[s]—the whole area was the premise[s] of his business."

The DOR appeared at the hearing and represented that Be Mi met all of the statutory requirements for the restaurant liquor by the drink license. Be Mi had "sufficient space under [its] control to provide seating for 'forty persons simultaneously at tables for the service of meals.'" This appeal followed.

On December 18, 2013, this court affirmed the master's decision denying the injunction to remove the deck, finding: "B[e Mi] has constructed, maintained, and improved the side deck at B[e Mi]'s own expense. The side deck constitutes a substantial part of B[e Mi]'s business and relieves congestion by the pool and pool bar, allows patrons a place to sit and eat, and provides shade." *St. Clements Homeowners Ass'n v. BE–MI, Inc.,* 2013–UP–466 (S.C. Ct.App. Filed Dec. 18, 2013).

**STANDARD OF REVIEW**

The review of the [ALC's] order must be confined to the record. The court may not substitute its judgment for the judgment of the [ALC] as to the weight of the evidence on questions of fact. The court of appeals may affirm the decision or remand the case for further proceedings; or, it may reverse or modify the decision if the substantive rights of the petitioner have been prejudiced because the finding, conclusion, or decision is:

(a) in violation of constitutional or statutory provisions;

(b) in excess of the statutory authority of the agency;

(c) made upon unlawful procedure;

(d) affected by other error of law;

(e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

S.C.Code Ann. § 1–23–610(B) (Supp.2013).

**LAW/ANALYSIS**

**I. Common Area Seating**

The Homeowners Association argues the ALC erred by ignoring or overriding the Master Deed to find that common area seating meets Be Mi's simultaneous seating requirement as a matter of law. We disagree.

The State, through the [DOR], is the sole and exclusive authority empowered to regulate the operation of all locations authorized to sell beer, wine, or alcoholic liquors, is authorized to establish conditions or restrictions which the department considers necessary before issuing or renewing a license or permit, and occupies the entire field of beer, wine, and liquor regulation except as it relates to hours of operation more restrictive than those set forth in this title.

S.C.Code Ann. § 61–2–80 (2009).

"[I]t is lawful to sell and consume alcoholic liquors sold by the drink in a business establishment ... if the establishment ... [is a] business ... bona fide engaged primarily and substantially in the preparation and serving of meals or furnishing of lodging...."

S.C.Code Ann. § 61–6–1610(A)(1) (2009). "'Bona fide engaged primarily and substantially in the preparation and serving of meals' means a business that provides facilities for seating not fewer than forty persons simultaneously at tables for the service of meals...." S.C.Code Ann. § 61–6–20(2) (Supp.2013).

 "Absent an allegation of fraud or a statu[t]e or a court rule requiring a higher standard, the standard of proof in administrative hearings is generally a preponderance of the evidence." *Anonymous (M–156–90) v. State Bd. of Med. Exam'rs,* 329 S.C. 371, 375, 496 S.E.2d 17, 19 (1998) (internal quotation marks omitted). "In reaching a decision in a contested violation matter, the ALC serves as the sole finder of fact in the de novo contested case proceeding." *S.C. Dep't of Revenue v. Sandalwood Soc. Club,* 399 S.C. 267, 279, 731 S.E.2d 330, 337 (Ct.App.2012) (italics omitted). "The Rules of Procedure for the Administrative Law Judge Division require that the AL[C] make independent findings of fact in contested case hearings, and the Administrative Procedures Act clearly contemplates that the AL[C] will make [its] own findings of fact in a contested case hearing." *Reliance Ins. Co. v. Smith,* 327 S.C. 528, 534, 489 S.E.2d 674, 677 (Ct.App.1997) (citation omitted). When the evidence conflicts on an issue, the court's substantial evidence standard of review defers to the findings of the fact-finder. *Risher v. S.C. Dep't of Health & Envtl. Control,* 393 S.C. 198, 210, 712 S.E.2d 428, 435 (2011).

 "The decision of the [ALC] should not be overturned unless it is unsupported by substantial evidence or controlled by some error of law." *Original Blue Ribbon Taxi Corp. v. S.C. Dep't of Motor Vehicles,* 380 S.C. 600, 604, 670 S.E.2d 674, 676 (Ct.App.2008). A reviewing court may reverse or modify an administrative decision if substantial evidence does not support the findings of fact. *Risher,* 393 S.C. at 210, 712 S.E.2d at 434. Substantial evidence is evidence that allows reasonable minds considering the record as a whole to reach the conclusion the administrative agency reached. *Id.* "Substantial evidence ... is more than a mere scintilla of evidence." *Original Blue Ribbon Taxi Corp.,* 380 S.C. at 605, 670 S.E.2d at 676. "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial

evidence." *Risher,* 393 S.C. at 210, 712 S.E.2d at 434 (alteration by court) (internal quotation marks omitted).

█ The record contains Goude's testimony that Be Mi has seating at tables for at least forty people. SLED's final report also indicated Be Mi met the seating requirements. The ALC, as the sole fact finder, found Be Mi had seating at tables for at least forty people. The record includes substantial evidence to support the ALC's finding. Accordingly, the ALC did not err in finding Be Mi met the seating requirements.

## II. Seating at Bar Stools

█ The Homeowners Association argues the ALC erred in finding bar stool space at a rail is table space.[2] We disagree.

" 'Bona fide engaged primarily and substantially in the preparation and serving of meals' means a business that provides facilities for seating not fewer than forty persons simultaneously at tables for the service of meals . . . ." § 61–6–20(2).

"Words in a statute must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand the statute's application." *Epstein v. Coastal Timber Co.,* 393 S.C. 276, 285, 711 S.E.2d 912, 917 (2011). "[T]he construction of a statute by the agency charged with its administration will be accorded the most respectful consideration and will not be overruled absent compelling reasons." *Brown v. S.C. Dep't of Health & Envtl. Control,* 348 S.C. 507, 515, 560 S.E.2d 410, 414 (2002) (alteration by court) (internal quotation marks omitted). "While the [c]ourt typically defers to the Board's construction of its own regulation, where . . . the plain language of the regulation is contrary to the Board's interpretation, the [c]ourt will reject its interpretation." *Id.* at 515, 560 S.E.2d at 415.

Table is not defined in the Code. *Webster's Dictionary* defines table as "a flat slab" or "a piece of furniture consisting

---

2. The ALC did not specifically find the bar stool space at the rail constituted seating at a table. It simply found Be Mi had sufficient space to provide seating for forty people simultaneously at tables, as specified by statute.

of a smooth flat slab fixed on legs or other support and variously used (as for eating)." *Webster's Third New International Dictionary: Unabridged* 2324 (1986). The wide rail described in the record meets this definition. The DOR determined Be Mi met the seating requirements. When testifying that Be Mi had at least forty seats at a table, Goude included the stools at the wide rail. The ALC determined Be Mi met the seating requirements, and substantial evidence supports that decision. Accordingly, the ALC did not err in finding Be Mi met the seating requirements.

### III. Commercial Rights

The Homeowners Association argues the ALC erred by giving commercial rights to Be Mi reserved to the Homeowners Association members under the Master Deed through use of common space. We disagree.

> Each co-owner shall comply strictly with the bylaws and with the administrative rules and regulations adopted pursuant thereto, as either of the same may be lawfully amended from time to time, and with the covenants, conditions and restrictions set forth in the master deed or lease or in the deed or lease to his apartment. Failure to comply with any of the same shall be grounds for a civil action to recover sums due for damages or injunctive relief, or both, maintainable by the administrator or the board of administration, or other form of administration specified in the bylaws, on behalf of the council of co-owners, or in a proper case, by an aggrieved co-owner.

S.C.Code Ann. § 27–31–170 (2007).

The ALC cannot resolve this issue in a contested liquor license case. As section 27–31–170 provides, noncompliance with the master deed is to be resolved by filing a suit with the circuit court. The Homeowners Association previously filed an action for an injunction with the circuit court. That action was then referred to the master, which found Be Mi had a right to use the deck space built over the parking spaces. The Homeowners Association did not appeal this court's affirmance of that decision. The ALC made its decision properly relying on how Be Mi was operating presently and the master-in-equity's denial of the Homeowners Association request to tear

down the deck Goude built. The proper court for the Home-owners Association to litigate whether Be Mi has a right to use the deck for the seating of its restaurant is in the circuit court.[3]

## IV. Written Contract

The Homeowners Association argues the ALC erred by ignoring the requirements of Regulation 7–202.1 of the South Carolina Code (Supp.2013) by finding Be Mi had a contract to use the premises without evidence of a required written contract or lease. We disagree.

A. Unless otherwise limited by statute or regulation, as used in Title 61, "premises" means all of the buildings and grounds that are both (1) subject to the direct control of the license holder and (2) used by the license holder to conduct its business.

B. For purposes of establishing the premises:

(1) The license holder's direct control of buildings and grounds may be shown by any of the following: (a) a deed or lease conveying to the license holder an appropriate interest that includes the premises; (b) a writing from a local governmental jurisdiction giving the license holder the right to use and the duty to maintain an area owned or controlled by the local governmental jurisdiction; (c) an enforceable written contract granting the license holder a right to use the premises.

Regs. 7–202.1.

 "The construction of a regulation is a question of law to be determined by the court." *S.C. Dep't of Revenue v. Blue Moon of Newberry, Inc.*, 397 S.C. 256, 260, 725 S.E.2d 480, 483 (2012) (internal quotation marks omitted). "We will correct the decision of the ALC if it is affected by an error of law, and questions of law are reviewed de novo." *Id.* (citations omitted). "Although our review of these questions is de novo,

---

3. This court does not take a position on whether the Homeowners Association is barred from initiating a suit against Be Mi based on the previous suit.

we will generally give deference to an agency's interpretation of its own regulation." *Id.* at 260–61, 725 S.E.2d at 483. "Nevertheless, we will reject the agency's interpretation if it is contrary to the regulation's plain language." *Id.*

Regulations are construed using the same rules of construction as statutes. *See S.C. Ambulatory Surgery Ctr. Ass'n v. S.C. Workers' Comp. Comm'n,* 389 S.C. 380, 389, 699 S.E.2d 146, 151 (2010). "Accordingly, [t]he words of a regulation must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the regulation's operation." *Blue Moon of Newberry,* 397 S.C. at 261, 725 S.E.2d at 483 (alteration by court) (internal quotation marks omitted). Further, the regulation must be construed as a whole rather than reading its component parts in isolation. *Id.*

Regulation 7–202.1 provides that a lease is one way a license holder may show control of the premises, not the only way. Be Mi showed control by building and use of the deck for over twenty years and the master's decision that the deck should not be torn down. The record contains substantial evidence to support the ALC's finding Be Mi had sufficient space under its control to seat forty persons. Accordingly, we affirm the ALC's decision.[4]

## CONCLUSION

The ALC's decision to issue the restaurant liquor by the drink license is

**AFFIRMED.**

WILLIAMS and LOCKEMY, JJ., concur.

---

4. The Homeowners Association also argued the ALC erred in granting a license to an applicant that did not meet the requirements. We did not separately address this argument because it is the underlying argument in each of its issues on appeal.