# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

McEntire Produce, Inc., Respondent,

v.

South Carolina Department of Revenue, Appellant.

Appellate Case No. 2019-001933

───────────

Appeal From The Administrative Law Court
Harold W. Funderburk, Jr., Administrative Law Judge

───────────

Opinion No. 5972
Submitted December 1, 2022 – Filed March 1, 2023

───────────

**REVERSED**

───────────

Elisabeth W. Shields and Jason P. Luther, both of the
South Carolina Department of Revenue, of Columbia, for
Appellant.

Burnet Rhett Maybank, III and James Peter Rourke, both
of Nexsen Pruet, LLC, of Columbia, for Respondent.

───────────

**THOMAS, J.:** The South Carolina Department of Revenue (SCDOR) appeals a
decision by the Administrative Law Court (ALC) that held purchases by McEntire
Produce, Inc. (McEntire) of certain supplies and protective clothing are entitled to
the South Carolina partial sales tax exemption under section 12-36-2120(17) of the
South Carolina Code (Supp. 2022). SCDOR argues the ALC erred in granting "the
machine exemption" and "the pollution control machine exemption," both found in
section 12-36-2120(17), to McEntire's purchases of items that are not "machines."
We reverse.

**FACTS**

McEntire operates a produce processing facility in Columbia, South Carolina. The facility processes lettuce, onions, cabbage, tomatoes, and other vegetables for sale. Its produce processing includes, but is not limited to, washing, cutting, mixing, and packaging the finished produce at the facility. As a manufacturer of fresh produce, McEntire is subject to both federal and state regulation, by the Food and Drug Administration (FDA), the South Carolina Department of Agriculture (SCDA), and the South Carolina Department of Health and Environmental Control (DHEC), with regards to food safety.

On February 7, 2017, SCDOR determined McEntire's purchases of certain supplies and protective clothing were subject to use tax for the tax periods October 1, 2012 through September 30, 2015 (the "audit period") and were not exempt from the use tax under section 12-36-2120(17). As such, SCDOR assessed McEntire $136,250.51 in unpaid taxes on July 19, 2016; however, between the issuance of SCDOR's determination and the hearing before the ALC, the parties agreed to a reduced amount of $126,912.60. McEntire timely protested the proposed assessment due to the parties' disagreement as to whether McEntire's purchase of supplies and protective clothing was exempt from the use tax. On March 7, 2017, McEntire filed a request for a contested case hearing with the ALC to challenge SCDOR's determination.

The ALC held a contested case hearing on November 14 and 15, 2018, and the court issued its final order on September 6, 2019. The court determined the majority of items for which McEntire sought exemptions were exempt from the use tax under section 12-36-2120(17), referred to as the "machine exemption."[1] The ALC further found items designated as protective clothing were also exempt from the use tax under a provision in section 12-36-2120(17), commonly referred to as the "pollution control machine exemption."[2] Because the ALC held some items were taxable, the ALC remanded the matter to SCDOR, instructing it to

---

[1] The exempted items included: cut wheel and disc maintenance tools; maintenance tools; forklift rental, forklift batteries, forklift parts, and forklift repair parts; hand trucks, pallet jacks, and oil lubricant used therein; generator rental; stacking containers; warehouse racks; pallet flow brakes; blower fans; bar code scanners; black ink aerosol cans; mobile computer stands; storage water tanks; cleaning machines; floor treatment chemicals; and floor drain covers.
[2] The exempted protective clothing items included coveralls, eyewear, gloves, aprons, and hairnets.

calculate the tax and interest due on the items the ALC deemed taxable. SCDOR filed a motion for reconsideration and/or to alter or amend on September 19, 2019. The ALC issued an order on October 16, 2019, denying SCDOR's motion. This appeal followed.[3]

## STANDARD OF REVIEW

"Upon exhaustion of his prehearing remedy, a taxpayer may seek relief from the department's determination by requesting a contested case hearing before the Administrative Law Court." S.C. Code Ann. § 12-60-460 (2014). "In an appeal from the decision of an administrative agency, the Administrative Procedures Act [the Act] provides the appropriate standard of review." *Original Blue Ribbon Taxi Corp. v. S.C. Dep't of Motor Vehicles*, 380 S.C. 600, 604, 670 S.E.2d 674, 676 (Ct. App. 2008). The Act provides the applicable standard:

> (B) The review of the administrative law judge's order must be confined to the record. The court may not substitute its judgment for the judgment of the administrative law judge as to the weight of the evidence on questions of fact. The court of appeals may affirm the decision or remand the case for further proceedings; or it may reverse or modify the decision if the substantive rights of the petitioner have been prejudiced because the finding, conclusion, or decision is:
> (a) in violation of constitutional or statutory provisions;
> (b) in excess of the statutory authority of the agency;
> (c) made upon unlawful procedure;
> (d) affected by other error of law;
> (e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
> (f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

---

[3] We find the order on appeal is immediately appealable. *See Torrence v. S.C. Dep't of Corr.*, 433 S.C. 224, 227, 857 S.E.2d 549, 550 (2021) (explaining a remand from the ALC to an agency may be immediately appealed if the remand is "viewed as ministerial").

S.C. Code Ann. § l-23-610(B) (Supp. 2022).

"The decision of the [ALC] should not be overturned unless it is unsupported by substantial evidence or controlled by some error of law." *Original Blue Ribbon Taxi Corp.*, 380 S.C. at 604, 670 S.E.2d at 676. "The court of appeals may reverse or modify the decision only if the appellant's substantive rights have been prejudiced because the decision is clearly erroneous in light of the reliable and substantial evidence on the whole record, arbitrary or otherwise characterized by an abuse of discretion, or affected by other error of law." *SGM-Moonglo, Inc. v. S.C. Dep't of Revenue*, 378 S.C. 293, 295, 662 S.E.2d 487, 488 (Ct. App. 2008).

**LAW/ANALYSIS**

SCDOR argues the ALC erred in granting the "machine exemption" and the "pollution control machine exemption," both found in section 12-36-2120(17), to McEntire's purchases of items that are not "machines." We agree.

Section 12-36-2120(17), the "machine exemption," currently provides certain items are exempted from sales taxes, including "machines used in manufacturing, processing, agricultural packaging, recycling, compounding, mining, or quarrying tangible personal property for sale."[4] Subsection 17 further provides:

> "Machines" include the parts of machines, attachments, and replacements used, or manufactured for use, on or in the operation of the machines and which
> (a) are necessary to the operation of the machines and are customarily so used . . . .

South Carolina Code of State Regulations 117-302.5(A) (2012) also explains "[m]achines used in manufacturing, processing, compounding, mining, or quarrying tangible personal property for sale, and the replacement parts and attachments to such machines, are exempt from the sales and use tax under Code Section 12-36-2120(17)." Regulation 117-302.5(B)(1) (2012) states a "machine qualifies for the exemption under Code Section 12-36-2120(17) if the machine is integral and necessary to the manufacturing process and the product being manufactured is being manufactured 'for sale.'" The Regulation adds a machine "includes every mechanical device or combination of mechanical powers, parts,

---

[4] This section was updated in 2016, after the audit period in this case, to add the term "agricultural packaging."

attachments and devices to perform some function and produce a certain effect or result, is integral and necessary to the manufacturing process . . . ." *Id.* It further enunciates a three-part test to determine whether a machine is "integral and necessary" to the manufacturing process:

> (a) The machine is used at a manufacturing facility. . . .
> (b) The machine is used in, and serves as an essential and indispensable component part of the manufacturing process, and is used on an ongoing and continuous basis during the manufacturing process. A machine is not a part of the manufacturing process merely because it is integral and necessary to the manufacturer. For example, machines used for warehouse, distribution, or administrative purposes are integral and necessary to the manufacturer, but not part of the manufacturing process.
> (c) The machine must be substantially "used in manufacturing . . . tangible personal property for sale." The statute does not require that the machine be used exclusively in manufacturing; however, incidental manufacturing use will not qualify for the exemption. For purposes of the exemption, more than one-third of a machine's use in manufacturing is substantial.

*Id.*

"The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Hawkins v. Bruno Yacht Sales, Inc.*, 353 S.C. 31, 39, 577 S.E.2d 202, 207 (2003). "The legislature's intent should be ascertained primarily from the plain language of the statute." *State v. Landis*, 362 S.C. 97, 102, 606 S.E.2d 503, 505 (Ct. App. 2004). "The language of a tax exemption statute must be given its plain, ordinary meaning and must be strictly construed against the claimed exemption." *TNS Mills, Inc. v. S.C. Dep't of Revenue*, 331 S.C. 611, 620, 503 S.E.2d 471, 476 (1998) (quoting *John D. Hollingsworth on Wheels, Inc. v. Greenville Cnty. Treasurer*, 276 S.C. 314, 317, 278 S.E.2d 340, 342 (1981)). However, "[i]f a statute is ambiguous, the courts must construe its terms." *Ferguson Fire & Fabrication, Inc. v. Preferred Fire Prot., L.L.C.*, 409 S.C. 331, 343, 762 S.E.2d 561, 567 (2014). "Where a word is not defined in a statute, our appellate courts have looked to the usual dictionary meaning to supply its meaning." *Lee v. Thermal Eng'g Corp.*, 352 S.C. 81, 91-92, 572 S.E.2d 298, 303 (Ct. App. 2002). The interpretation of a statute or construction of a regulation is a

question of law for the court. *Hopper v. Terry Hunt Constr.*, 383 S.C. 310, 314, 680 S.E.2d 1, 3 (2009); *S.C. Dep't of Revenue v. Blue Moon of Newberry, Inc.*, 397 S.C. 256, 260, 725 S.E.2d 480, 483 (2012) (quoting 2 Am. Jur. 2d *Administrative Law* § 245). This court will correct the decision of the ALC if it is affected by an error of law or if substantial evidence does not support the findings of fact. *Blue Moon of Newberry*, 397 S.C. at 260, 725 S.E.2d at 483; *Be Mi, Inc. v. S.C. Dep't of Revenue*, 408 S.C. 290, 297, 758 S.E.2d 737, 741 (Ct. App. 2014).

## A. Machine Exemption

SCDOR determined the manufacturing process at issue in this case is the processing of produce and only certain machines involved in the operations fall within the machine exemption as "integral and necessary" to the processing of produce as outlined in Regulation 117- 302.5(B)(l). Thus, SCDOR found the following items were not tax exempt "machines": cut wheel and disc maintenance tools; maintenance tools; forklift rental, forklift batteries, forklift parts, and forklift repair parts; hand trucks, pallet jacks, and oil lubricant used therein; generator rental; stacking containers; warehouse racks; pallet flow brakes; blower fans; bar code scanners; black ink aerosol cans; mobile computer stands; storage water tanks; cleaning machines; floor treatment chemicals; and floor drain covers.

In making its decision that these items were tax-exempt machines, the ALC applied the "Integrated Plant Concept," which it stated finds machinery that performs an essential or indispensable function in the taxpayer's manufacturing operations, regardless of whether it actually causes a physical change, is eligible for the exemption. The ALC cited *Niagara Mohawk Power Corporation v. Wanamaker*, 144 N.Y.S.2d 458, 461-62 (N.Y. App. Div. 1955) for the test. The *Niagara* court concluded the purchase or use of coal and ash handling equipment was not taxable because the equipment was as essential to production as the generator itself. *Id.* The court further determined the buildings at a steam station were not taxable because they housed and steadied the machinery that was essential to production. *Id.* The court stated "[t]he important thing is that all parts of the plant contribute, continuously and vitally, to production, and they are all integrated and harmonized." *Id.*

SCDOR agrees our courts have recognized that South Carolina uses an integrated plant theory for the purpose of applying the machine exemption. However, SCDOR asserts our integrated plant theory is a limited one and the court erred in relying on the *Niagara* case because New York's integrated plant theory is much broader. Thus, SCDOR maintains the ALC incorrectly expanded what it means to

be "used in processing." SCDOR states Regulation 117-302.5 provides that to be an exempt machine, the item must: (1) be "[a] machine, which includes every mechanical device or combination of mechanical powers, parts, attachments and devices that perform some function and produce a certain effect or result"; (2) which "is integral and necessary"; (3) to processing "tangible personal property for sale." In this case, it argued the machine exemption exempts only those machines that are integral and necessary to the sorting, cutting, washing, and packaging of produce.

The ALC disagreed with SCDOR and found "that given McEntire's highly regulated business as a fresh produce processor, the machinery and equipment used both before and after the actual production line processing of the fresh produce are integral and necessary not only to the overall manufacturing process, but also to the health and safety functions imbedded within the manufacturing of fresh produce." Further, "[w]ithout the processes that occur in the climate-controlled [] areas of the plant, [McEntire] would be unable to safely and efficiently produce a finished product for sale and distribution." Thus, "[t]hese processes contribute continuously and vitally to the plant's overall production and are also integrated and harmonized into the activities that occur directly in the production line, as conceived in the Integrated Plant Concept." Having concluded McEntire's manufacturing operations consisted of more than the simple production line manufacturing occurring in the cutting room, the ALC then had to determine whether the supplies at issue fell within the definition of "machine" so as to qualify as tax exempt under section 12-36-2120(17).

In *Hercules Contractors & Engineers, Inc. v. South Carolina Tax Commission*, 280 S.C. 426, 429-30, 313 S.E.2d 300, 302-03 (Ct. App. 1984), this court found the evidence clearly supported the holding of the trial court that a facility that treated waste of a plant produced in connection with its manufacture of textile products for sale operated as one single entity and that entity was a "machine." The court also found various "vats or basins," as well as certain railings, walkways and ladders, and tanks, troughs and pipes, were all "integral and necessary to the operation of the system as a whole." *Id.* at 430, 313 S.E.2d at 303. Further, it noted railings, walkways, and ladders were required by state and federal law and were necessary to the overall function of the system. *Id.* Thus, all materials used in the facility's construction were tax exempt. *Id.* at 429, 313 S.E.2d at 302.

SCDOR asserts *Hercules* is distinguishable, because in that case, this court determined the entire treatment facility was a machine, whereas here, McEntire's whole facility is not a machine. It asserts none of the items the ALC found were

exempt under the machine exemption are integrated into McEntire's facility or have anything to do with exempt machines within McEntire's facility. SCDOR also argues the ALC erred by broadening the term "machine" beyond its plain meaning in the machine exemption. SCDOR asserts a machine is defined by Regulation 117-302.5(B)(1) as "every mechanical device or combination of mechanical powers, parts, attachments and devices to perform some function and produce a certain effect or result . . . ." SCDOR states Regulation 117-302.5 limits the term machine to "only those items that are integral and necessary to the functioning of an exempt machine, and solely for this reasoning are such items integral and necessary to the manufacturing process."

The machine exemption regulation does not define the terms "integral" and "necessary." Those are commonly defined as "essential to completeness" and "an indispensable item." *Merriam-Webster Collegiate Dictionary* 607 & 776 (10th ed. 1993). The regulation also does not define "essential" or "indispensable," but the common dictionary definitions for both terms provide that something is essential or indispensable if it is "of the utmost importance" or "absolutely necessary." *Merriam-Webster Collegiate Dictionary* 396 & 593 (10th ed. 1993). Further, "processing" is not defined in the regulation. The word "process" is defined as "to subject to a special process or treatment (as in the course of manufacture)." *Merriam-Webster Collegiate Dictionary* 929 (10th ed. 1993).

SCDOR argues to be exempt under the machine exemption, a machine does not have to be used directly in the production line but it must be integral and necessary to processing produce. Thus, a machine at McEntire's plant qualifies for the machine exemption only when it is absolutely necessary to the actual processing of fresh produce. As a result, SCDOR maintains activities that occur prior to and after the sorting, cutting, washing, and packaging of produce (i.e., air quality control, storage, material handling) are not absolutely necessary and are not considered a part of the processing of fresh produce and the associated machines or items do not qualify for the machine exemption to the use tax.

Further, SCDOR argues the fact the legislature added "agricultural packaging" as an exempt use in 2016,[5] after the audit period in this case, is not an indication that it had intended such a use to be included in the previous version of the machine exemption. It states that the addition indicates those activities were not exempt prior to the 2016 statutory change and the purpose of the amendment was to make agricultural packaging an exempt use, not to clarify any legislative intent on the

---

[5] 2016 S.C. Acts No. 256 § 427 (effective July 1, 2016).

exempt uses previously codified. Accordingly, it states the ALC erred in considering the amendment in its decision.

We consider each of the specific items at issue:

      1.     Fork lifts, pallet jacks, and lubricants:

SCDOR argues forklifts (along with their respective parts and batteries), pallet jacks, and hand trucks are not machines used in the processing of produce. McEntire asserted they are machines used in the processing of produce to move heavy produce from place to place and to certain lines of production within the facility. However, Regulation 117-302.5(B)(4)(a) provides "[w]arehouse machinery used only for warehouse purposes, loading and unloading, storing, transporting raw materials and finished products" are not tax exempt. Thus, these items are not tax exempt.

McEntire also asserted the forklifts were used directly in the food processing to dump produce onto the conveyor system, which moves the raw produce into the processing area. However, Regulation 117-302.5(B)(4)(a) also provides conveyance machines are tax exempt if they "are used substantially to feed raw material into or onto the first processing machine in the manufacturing process area *in addition* to being used in loading, unloading, storing, and transporting raw materials from the warehouse to the manufacturing area, or transporting finished products from the manufacturing area to the warehouse." (Emphasis added). Thus, because the forklifts feed the bin dumping conveyance system and not the first processing machine, they are not tax-exempt conveyance machines.

      2.     Bar code scanners, black ink aerosol cans, and mobile computer stands:

SCDOR argues record-keeping items, like bar code scanners, black ink aerosol cans, and mobile computer stands, that are used for tracking produce are not machines and, as such, cannot qualify for the machine exemption. McEntire disagrees and states that while the computer stands are not required by law, the checkpoints where the stands are used are required by law. However, Regulation 117-302.5(B)(9) provides: "[a]dministrative machines, furniture, equipment, and supplies, such as office computers used for . . . recordkeeping . . . are not machines used in the process of manufacturing tangible personal property for sale and are not exempt from the tax." Thus, these items are not tax exempt.

3.    Floor drain covers:

SCDOR argues floor drain covers that keep debris and produce from entering McEntire's floor drain system are not machines for purposes of the machine exemption.  McEntire argues they are integral and necessary to processing produce because they prevent pollution of the waste water and, as such, are exempt.  Because drain covers are a "mechanical device or combination of mechanical powers, parts, attachments and devices to perform some function" as provided in Regulation 117-302.5(B)(1), we find they are not tax exempt.

4.    Warehouse racks, pallet flow brakes, stacking containers, and blower fans:

SCDOR argues warehouse racks, pallet flow brakes, stacking containers, and blower fans are used for storage/temperature control and are not machines used in the processing of produce.  McEntire argues Regulation 117-302.5(C)(24) finds as exempt: "Machines used to condition air (including humidification systems) for quality control during the manufacturing process of tangible personal property made from natural fibers and synthetic materials."  However, Regulation 117-302.5(B)(7) states that machines used for storage, including racks used to store raw materials or finished goods, are not exempt from sales tax as machines used in manufacturing tangible personal property for sale.  Thus, these items are not tax exempt.

SCDOR also argues blower fans used to control the temperature where the produce is being processed are tax-exempt but machines used outside of the manufacturing process are taxable.  Thus, to prove the blower fans are substantially used in processing, McEntire had to show "more than one-third of the machine's use" was in processing fresh produce per Regulation 117-302.5(B)(1)(c).  McEntire did not provide evidence as to where the blower fans are used except to say they are used in mulitple areas.  Thus, blower fans are not tax exempt.

5.    Water storage tanks:

SCDOR argues water storage tanks are not machines used in the processing of produce.  McEntire asserts Regulation 117-302.5(C)(8) holds that "[t]anks which are a part of the chain of processing operations" are exempt.

However, Regulation 117-302.5(B)(7)(b) provides that machines used for storage are taxable, including "[s]torage tanks used to store raw materials, gasses, or water." McEntire did not present evidence the tanks are used during processing. Thus, they are not tax exempt.

6.     Cleaning machines and floor treatment chemicals:

SCDOR argues cleaning machines (foamers) and floor treatment chemicals are not machines used in the processing of produce. McEntire did not provide evidence regarding the specific processing equipment it cleans with foamers or whether cleaning is necessary to ensure the functioning of the equipment. Regulation 117-302.5(B)(5)(a)(i) provides for a chemical to be exempt, it must be used on an exempt machine on an ongoing and continuous basis and be essential to the functioning of the exempt machine. Because there was no testimony the chemicals were used on any exempt machines, they are not tax exempt. Regulation 117-302.5(B)(5)(b) also provides chemicals used to clean floors and walls and non-exempt machines, like storage tanks, are not tax exempt. Thus, the floor treatment chemicals are not tax exempt.

7.     General maintenance tools:

SCDOR argues the general maintenance tools used to maintain, repair, install, and uninstall equipment are not used on an ongoing and continuous basis and, thus, do not qualify for the machine exemption. Regulation 117-302.5(B)(1)(b) provides a machine is integral and necessary to the manufacturing process if it is "used on an ongoing and continuous basis during the manufacturing process." The evidence demonstrates McEntire uses its maintenance tools on an "as needed" basis. Thus, they are not tax exempt.

8.     Generator rentals:

Finally, SCDOR also argues the generator rentals are not used on an ongoing and continuous basis and, thus, do not qualify for the exemption. McEntire asserted the generators are used to speed up the ripening process and change the colors of the tomatoes and they are not used year-round because some crops do not need ripening. Because they are not used on an ongoing and continuous basis, they are not tax exempt. *See* Regulation 117-302.5(B)(1)(b) (providing a machine is integral and necessary to the

manufacturing process if it is "used on an ongoing and continuous basis during the manufacturing process").

While we note the decision of the ALC should not be overturned unless it is unsupported by substantial evidence or controlled by some error of law, this court generally gives deference to an agency's interpretation of its own statutes and regulations. *See Original Blue Ribbon Taxi Corp.*, 380 S.C. at 604, 670 S.E.2d at 676 ("The decision of the Administrative Law Court should not be overturned unless it is unsupported by substantial evidence or controlled by some error of law."); *Blue Moon of Newberry*, 397 S.C. at 260-61, 725 S.E.2d at 483 ("Although our review of these questions is de novo, we will generally give deference to an agency's interpretation of its own regulation."); *Brown v. Bi-Lo, Inc.*, 354 S.C. 436, 440, 581 S.E.2d 836, 838 (2003) (recognizing this court generally gives deference to an administrative agency's interpretation of an applicable statute or its own regulation). "[T]he construction of a statute by the agency charged with its administration will be accorded the most respectful consideration and will not be overruled absent compelling reasons." *Be Mi, Inc.*, 408 S.C. at 298, 758 S.E.2d at 741 (alteration by court) (quoting *Brown v. S.C. Dep't of Health & Envtl. Control*, 348 S.C. 507, 515, 560 S.E.2d 410, 414 (2002)); *Kiawah Dev. Partners, II v. S.C. Dep't of Health & Env't Control*, 411 S.C. 16, 34, 766 S.E.2d 707, 718 (2014) ("[T]he deference doctrine[,] properly stated[,] provides that where an agency charged with administering a statute or regulation has interpreted the statute or regulation, courts, including the ALC, will defer to the agency's interpretation absent compelling reasons."); *Marchant v. Hamilton*, 279 S.C. 497, 500, 309 S.E.2d 781, 783 (Ct. App. 1983) ("Administrative interpretations of statutes, consistently followed by the agencies charged with their administration and not expressly changed by Congress, are entitled to great weight."). A tax exemption statute is strictly construed against the taxpayer claiming the exemption. *TNS Mills, Inc.*, 331 S.C. at 620, 503 S.E.2d at 476. "This rule of strict construction simply means that constitutional and statutory language will not be strained or liberally construed in the taxpayer's favor." *CFRE, LLC v. Greenville Cnty. Assessor*, 395 S.C. 67, 74, 716 S.E.2d 877, 881 (2011) (quoting *Se. Kusan, Inc. v. S.C. Tax Comm'n*, 276 S.C. 487, 489, 280 S.E.2d 57, 58 (1981)).

We find SCDOR's interpretation that each of the items at issue are not tax exempt under the machine exception to be supported by the statue and regulations it is charged with administering. Thus, the ALC erred in broadening the machine exemption beyond the statute's plain meaning. *See Be Mi, Inc.*, 408 S.C. at 298, 758 S.E.2d at 741 ("Words in a statute must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand the

statute's application." (quoting *Epstein v. Coastal Timber Co.*, 393 S.C. 276, 285, 711 S.E.2d 912, 917 (2011))).

## B.    Machine Exemption and Pollution Control Machine Exemption

SCDOR also found items designated as "protective clothing" (coveralls, eyewear, gloves, aprons, and hairnets) were not exempt from the use tax under the machine exemption or a provision in section 12-36-2120(17), commonly referred to as the "pollution control machine exemption."

Section 12-36-2120(17)(b) provides:

> "Machines" include the parts of machines, attachments, and replacements used, or manufactured for use, on or in the operation of the machines and which . . . (b) are necessary to comply with the order of an agency of the United States or of this [s]tate for the prevention or abatement of pollution of air, water, or noise that is caused or threatened by any machine used as provided in this section.

Regulation 117-302.5(B)(10) (2012) provides:

> Protective clothing worn by an employee working in the area in which the manufacturing process occurs does not qualify as a machine and is not exempt from the tax as a machine used in manufacturing tangible personal property for sale under Section 12-36-2120(17). However, "clothing and other attire required for working in a Class 100 or better as defined in Federal Standard 209E clean room environment" is exempt under the provisions of Section 12-36-2120(54).

The pollution control regulation, Regulation 117-302.6 (2012), states in relevant part:

> Code Section 12-36-2120(17) exempts from the sales or use tax the gross proceeds of the sale of machines used in mining, quarrying, compounding, processing and manufacturing of tangible personal property and the term

> "machine" includes parts of such machines, attachments and replacements therefor which are used or manufactured for use on or in the operation of such machines and which are necessary to the operation of such machines and which are customarily so used[.]
> . . .
>
> The term "machine" as defined in Section 12-36-2120(17) shall include machines, their parts and attachments, when the same are necessary to comply with the order of an agency of the United States or of this state for the prevention or abatement of pollution that is caused or threatened by any machines used in the mining, quarrying, compounding, processing and manufacturing of tangible personal property.

The ALC concluded protective clothing falls within the parameters of clause A of the machine exemption as a "machine" because it is "necessary and integral" to McEntire's manufacturing process. To prove that protective clothing falls within clause B, the pollution control exemption of section 12-36-2120(17), the ALC held McEntire must show: "(1) the operation of at least one machine used in the manufacturing process causes or threatens to cause pollution of air, water, or noise; (2) a [s]tate or federal agency requires that the pollution be prevented or abated; and (3) [] the protective clothing is used to prevent or abate the pollution."

The ALC noted the word "pollution" is not defined in section 12-36-2120(17) but "'contamination' fits within the ordinary and dictionary definitions of pollution in the context of food." The court found "pollution" is "defined by Black's Law Dictionary as, '[t]he presence of harmful substances (either physical or gaseous), noise or energy (radiation) within a certain area, that causes harm to the surroundings, altering the natural environment around which it has been excreted.'" The court also noted "Wikipedia defines 'pollution' as 'the introduction of contaminants into the natural environment that cause adverse change.'" Also, "Dictionary.com defines 'pollution' as '1. the act of polluting or the state of being polluted, 2. The introduction of harmful substances or products into the environment.'"

The court found Dr. David Gombas, McEntire's expert witness, defined "pollution" as "any contaminant that may be injurious to the intended consumer." In the context of food safety, Dr. Gombas testified "the terms 'pollution' and 'contaminant'

are synonymous and used interchangeably throughout the food manufacturing industry." Dr. Gombas also testified "protective clothing is a necessary protection against contamination or pollution . . . in any fresh cut or fresh produce handling facility; likewise, any ready-to-eat food processing facility." The court found "when asked whether the major foodborne illnesses associated with fresh produce (E. coli, Listeria, and Salmonella) constitute 'pollution' as defined by Black's Law Dictionary, Wikipedia, and dictionary.com, Dr. Gombas answered in the affirmative and confirmed that all three of the harmful substances meet the various definitions of pollution." Further, the court noted a publication by the World Health Organization states "foodborne illnesses are caused by bacteria, viruses, parasites, or chemical substances that enter the human body through contaminated food (i.e. fruits and vegetables contaminated with feces) or water."

The court also noted McEntire was "regulated under the FDA's 21 C.F.R. §§ 110 and 117, which establish the requirements of a food safety plan and the performance of hazard analyses and lay out the preventive controls that must be instituted in order to mitigate hazards in food processing." Dr. Gombas testified "if a manufacturer does not abide by these regulations, for example if McEntire could not afford or did not provide protective clothing to prevent contamination, then the manufacturer would be operating in violation of the law." The ALC then found protective clothing, including coveralls, eyewear, gloves, aprons, and hairnets, fell within the pollution control machine exemption under the Integrated Plant Concept as within the scope of McEntire's manufacture of fresh produce because it is mandated by the FDA and the SCDA and "is used for health and safety reasons to protect the product, the consumer, and the general public from foodborne illness."

However, Regulation 117-302(B)(10) provides: "Protective clothing worn by an employee working in the area in which the manufacturing process occurs does not qualify as a machine and is not exempt from the tax as a machine used in manufacturing tangible personal property for sale under Section 12-36-2120(17)." Thus, because protective clothing is not considered a machine for purposes of the machine exemption, we find protective clothing is not exempt from use tax as a machine used in processing or manufacturing.

The Regulation does provide there is an exception for "clothing and other attire required for working in a Class 100 or better as defined in Federal Standard 209E clean room environment." However, the ALC found it could not conclude, based on the limited amount of testimony provided, that McEntire's purchases of protective clothing during the audit period should be exempt from tax based on the Class 100 or better Clean Room Exemption. The SCDOR auditor testified she

denied McEntire the pollution control exemption under the class 100 because it did not provide her with adequate evidence that it met the standard.

We find SCDOR's interpretation that protective clothing is not tax exempt under the machine exemption or the pollution control machine exemption is supported by the statute and regulations it is charged with administering.  Thus, the ALC erred in broadening the exemptions beyond the statute's plain meaning.  *See Be Mi, Inc.*, 408 S.C. at 298, 758 S.E.2d at 741 ("Words in a statute must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand the statute's application." (quoting *Epstein*, 393 S.C. at 285, 711 S.E.2d at 917)).

**CONCLUSION**

Accordingly, the order of the ALC is

**REVERSED.**[6]

**WILLIAMS, C.J., and LOCKEMY, A.J., concur.**

---

[6]   We decide this case without oral argument pursuant to Rule 215, SCACR.